THEO. BASTING, Receiver, v. NORTHERN TRUST COMPANY.[1]

| 65 | 495 |
| 80 | 423 |

July 15, 1896.

Nos. 10,023—(248).

**Appeal—Weight of Evidence.**

Evidence considered, and *held* sufficient to justify the finding of the trial court.

Action in the district court for Hennepin county. The case was tried before Elliott, J., who found in favor of plaintiff, and ordered judgment in his favor for $3,637.50. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Carman N. Smith*, for appellant.

*Cobb & Wheelwright*, for respondent.

BUCK, J.[2]    This case was before this court upon a former appeal, and is reported in 61 Minn. 307, 63 N. W. 721, and it is not necessary to review the law as there laid down. Most of the facts now appearing were there stated.

The sufficiency of the evidence to sustain the finding of the court upon one point is challenged. The defendant, in this respect, contends that, at the time of the delivery of the stock certificate as a pledge, Nimocks, from whom it was obtained, represented to the defendant that 75 shares were fully paid up, and were not subject to calls and assessments; that defendant believed these representations to be true, and relied upon them; and that, so relying upon the truth of these representations and statements, the loan was made, and said shares of stock were accepted as collateral security. The court found as a fact that none of these allegations were sustained by the evidence, and that they were not true. The correctness of this finding rests upon the testimony of Charles Kittleson, who was the defendant's secretary and treasurer.

Upon direct examination he testified that Nimocks represented that the stock of the Times Company was of the par value, and that

1 Reported in 67 N. W. 1017.    2 Mitchell, J., absent, took no part.

all of the assessments were paid up; and that he believed Nimocks' statement that the stock was fully paid. But upon his cross-examination he testified as follows:

"Q. You asked him if the stock was fully paid? A. Yes; I think— Well, I asked him if he considered this stock as valuable, good collateral. Q. That is all you asked him? A. I might have asked him other questions. That was the main point. Q. Did you know anything about the value of the stock at that time? A. No, sir. Q. Did you ask him who was connected with the company? A. I think he told me who were the promoters of the company. Q. Did you ask him what business it was engaged in? A. I was aware of that. Q. What was it? A. Printing. Q. What? A. A newspaper. Q. Did you ask him whether the company was in good financial condition? A. I don't think so. Q. Didn't you ask him that question? A. No, sir. Q. Now, then, in substance, all that you asked him was whether that was sufficient security for that note? A. That is about the substance of it. Q. As to whether or not Mr. Nimocks thought it was good security for the note? A. Yes, sir. Q. You didn't make any inquiries of the company? A. No, sir. * * * Q. You never made any attempt to examine the books of the Times Company, or make any inquiries of its officers? A. No, sir. Q. Your business at that time was on the corner of Nicollet and Fourth street? A. Yes, sir. Q. The Times office was in the same block? A. Yes, sir. Q. No new money was advanced to these gentlemen at that time? A. I don't think so."

This cross-examination very seriously shook the testimony of the witness given upon his direct examination. In such a case the trial court has a better opportunity of judging, from the manner and appearance of the witness, the weight to be given his testimony, than this court. The question is not free from doubt, but certainly the evidence is not so palpably and manifestly against the finding of the trial court as to warrant us in setting it aside.

Order affirmed.